James C. Pettis, California Bar No. 223953
Sarah B. Burwick, California Bar No. 267263
**PETTIS LAW FIRM LLP**
2447 Pacific Coast Highway, Suite 100
Hermosa Beach, California 90254
Telephone:     (213) 545-6448
Facsimile:      (213) 816-1966
E-Mail:          jimpettis@pettislawfirm.com
                      sarah@pettislawfirm.com

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STACY S. HAMPEL, an individual; AMIT M. HAMPEL, an individual, on behalf of themselves and all other similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> FIRST REPUBLIC BANK, a California corporation, and DOES 1 through 100, Inclusive, <br><br> Defendant. | Case No. <br><br> CLASS ACTION COMPLAINT FOR DAMAGES BASED ON: <br><br> 1. BREACH OF CONTRACT <br> 2. UNJUST ENRICHMENT <br> 3. VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACTS <br> 4. VIOLATION OF TRUTH IN LENDING ACT <br> 5. VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, BUS. & PROF. CODE §17200 *et seq*. <br><br> DEMAND FOR JURY TRIAL |

Plaintiffs STACY S. HAMPEL and AMIT M. HAMPEL (collectively, "Plaintiffs"), individually, and on behalf of all other similarly situated residential borrowers of Defendant FIRST REPUBLIC BANK ("Defendant"), hereby allege as follows:

**CLASS ACTION COMPLAINT**

**INTRODUCTION**

1. Plaintiffs bring this Class Action on behalf of themselves and all other persons who entered home equity line of credit agreements that provided for mortgage amortization payments from First Republic Bank ("Defendant") during the relevant time period to recover, among other things, damages, restitution, civil penalties, and attorneys' fees for (1) Breach of Contract; (2) Unjust Enrichment; (3) violations of the California and federal Fair Debt Collection Practices Acts; (4) violations of the Truth in Lending Act; and (5) violations of the California Business and Professions Code, section 17200.

2. Defendant has overbilled Plaintiffs and other borrowers with home equity lines of credit (HELOCs) by charging excessive and incorrect monthly payments on their outstanding loan balances during the first half of their respective 15-year Repayment Periods.

3. Defendant's HELOC Loan Agreements ("Loan Agreements") require borrowers to make level, "substantially equal" payments under a calculation method known as mortgage amortization. Mortgage amortization is the classic, most common method for repayment of residential secured loans. Applying the agreed-upon payment schedule, assuming the interest rate remains stable and no additional fees are incurred, HELOC borrowers' monthly payments are to remain same amount each month, with the proportions of principal and interest being paid off each month to vary over the life of the loan, such that the borrower pays more interest at first, but eventually more principal, while the overall monthly payment amount remains stable.

4. An amortized mortgage payment first pays off the interest expense for the billing period; any remaining amount is put towards reducing the principal amount. A mortgage amortization schedule affords many benefits to borrowers, such as predictable payment amounts, which help with budgeting and financial planning.

5. Instead of charging level payments as required and agreed upon in the agreements, Defendant has used an improperly amortized add-on-interest method known as "straight amortization." This method, which is rarely used in the residential mortgage context, violates the language in the loan agreements, and significantly inflates the monthly payment

during the early Repayment Period, thereby depriving Plaintiffs and the class members of the use and benefit of that money, and giving Defendant a windfall. Plaintiffs are informed and believe that First Republic has overcharged borrowers, using this improper method, across its portfolio of HELOCs nationwide.

6. Defendant's system-wide overcharges to borrowers in the first 90 months of their respective 15-year prepayment periods cause borrowers to, in effect, prepay excess amounts of principal before such repayment is required by the loan documents, thereby depriving Plaintiffs and class members of the use of those funds.

7. Plaintiffs ask the Court to order Defendant to correctly re-calculate Plaintiffs and the class members' monthly payment schedules during the Repayment Period by amortizing the payments according to the terms of the Loan Agreement. Plaintiffs also request judgment for restitution of excess funds already paid, damages, civil penalties, reasonable attorneys' fees, and all other available relief.

**PARTIES**

8. Plaintiffs Stacy S. Hampel and Amit M. Hampel are individuals and residents of North Carolina. At all relevant times, Plaintiffs owned the property located at 117 South Bald Hill Road, New Canaan, CT 06840 (the "Hampel Property" or "Property").

9. Defendant First Republic Bank is a California corporation with its headquarters located at 111 Pine Street, San Francisco, CA 94111.

10. Plaintiffs are informed and believe and thereon allege that at all times relevant herein, each of the Defendant Does 1-100 were responsible in some manner for the occurrences and injuries alleged in this complaint. Their names and capacities are currently unknown to Plaintiffs. Plaintiffs will amend this Complaint to show such true names and capacities when the same have been ascertained.

11. Plaintiffs are informed and believe and thereupon allege that each of the defendants acted in concert with each and every other defendant, intended to and did participate in the events, acts, practices and courses of conduct alleged herein, and were a

proximate cause of damage and injury thereby to Plaintiffs and members of the proposed class as alleged herein.

12. At all times herein mentioned, each defendant was the agent or employee of each of the other defendants and was acting within the course and scope of such agency or employment.

## JURISDICTION & VENUE

13. Plaintiffs bring this action seeking class-action status and alleging breach of contract, unjust enrichment, violations of California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") and the Fair Debt Collection Practices Act ("FDCPA"), violations of Truth in Lending Act ("TILA"), and violations of California's Unfair Competition Law.

14. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs are citizens of North Carolina and Defendant is a citizen of California; there are one hundred or more class members, many of whom are citizens of states other than those where Defendant is a citizen; and the aggregate amount in controversy is believed to exceed $5,000,000.

15. Additionally, this Court has original subject matter jurisdiction over the Third and Fourth Causes of Action in the Complaint pursuant to 28 U.S.C. § 1331 because those claims arise arises under the laws of the United States.

16. This Court has supplemental subject-matter jurisdiction over the remaining claims of this Complaint pursuant to 28 U.S.C. § 1367(a), because those claims are so related that they form part of the same case or controversy under Article III of the United States Constitution.

17. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because, given that Defendant is headquartered in this District, a substantial part of the events giving rise to the claims asserted herein occurred in this District. Specifically, the Plaintiffs' and class members' loans were originated from this District, and Defendant's systematic policy of

incorrectly charging Plaintiffs and class members' HELOC payments also emanated from this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

18. Plaintiff and members of the proposed class are homeowners who took out home equity lines of credit ("HELOC") secured by residential property.

19. The Plaintiffs, like all Class Members, entered into form home equity line agreements ("Loan Agreements") with Defendant. Plaintiff are informed and believe that these loan agreements were substantially identical. Only the names of the borrowers, dates, maximum loan amounts, interest rates, and rate margins varied, but the amortization method at-issue did not.

20. These Loan Agreements provide that during the initial "Draw Period," the borrower is permitted to draw up to the maximum loan amount and pay interest only on the outstanding principal balance. At the end of the Draw Period, the right to draw terminates, and any balance remaining on the loan is locked and converted to a term loan with a 15-year Repayment Period.

21. The Loan Agreements provide that payments during the Repayment Period are calculated as follows: "During the Repayment Period, your Total Payment Due will be equal to the amount, calculated monthly by Lender, which would be sufficient to fully repay the balance on your Account, at the then current ANNUAL PERCENTAGE RATE in substantially equal installments over the remaining terms of your Account, plus all other amounts, including but not limited to late payments or late charges, then due but as yet unpaid."[1]

22. The Loan Agreements further provide that each monthly payment will be applied to: interest, late charges, other charges, and then the loan's principal – in that order.

---

[1] Based on the ubiquity of the mortgage amortization method of repayment, Plaintiffs are informed and believe and on that basis allege that Defendant's form HELOC agreements in all states in which Defendant operates contain substantially similar language providing for amortized mortgage payments.

23. Instead of following the payment schedule agreed upon and disclosed in the HELOC Loan Agreement, which is known as mortgage amortization, Plaintiffs are informed and believe that Defendant systematically and without consent applied a payment schedule known as "straight amortization," which is a different type of amortization rarely used for HELOCs. Under the straight-line amortization payment schedule that Defendant's computer programs are incorrectly and systematically applying to the affected loans, borrowers' payments vary dramatically each month, with a static principal amount and a fluctuating interest portion.

24. The straight amortization payment schedule violates the terms of Plaintiffs and the class members' Loan Agreements, and requires borrowers to pay significantly more during the first half of the repayment period, thereby depriving borrowers of the use of these funds, at the enrichment of Defendant.

25. By failing to disclose that Defendant would be demanding payment pursuant to a straight-line amortization schedule once the Repayment Period begins, Defendant violated the Truth in Lending Act and both the California Rosenthal Act and its federal counterpart, the Fair Debt Collection Practices Act. Defendant's unilateral switch to an unauthorized payment method is also an unfair, unlawful, and/or fraudulent business practice under California and other states' unfair competition laws.

26. Defendant's HELOC loans are consumer transactions secured by the respective borrowers' residential real estate.

## PLAINTIFFS' LOANS

27. More specifically, on or about December 15, 2010, Plaintiffs purchased the Hampel Property to serve as their primary residence. To finance the purchase of the Property, Plaintiffs took out two secured loans from Defendant.

28. The first loan was a 30 year adjustable rate mortgage in the amount of $1,000,000, memorialized in an Adjustable Rate Note (the "Note") and secured by an Open-Ended Mortgage Deed on the Property. According to the Note, Plaintiffs would make interest-only payments for the first 10 years of the loan. Following the interest-only period, Plaintiffs

agreed to "make monthly payments of principal and interest in an amount that would be sufficient to repay the unpaid principal that I am expected to owe at that time in full on the maturity date at the interest rate then in effect in substantially equal payments." (Note, attached as Exhibit 1, section 3(A).)

29. The second loan was a 25-year HELOC. Under Plaintiffs' and Defendant's FirstLine Equity Secured Line of Credit Agreement (the "HELOC Agreement"), Plaintiffs could borrow up to $495,000 during a 10-year Draw Period. Following this period, the credit limit closed, and a 15-year Repayment Period would commence. (*See* HELOC Agreement, attached as Exhibit 2.)

30. According to Section 12(b) of Plaintiffs' HELOC Agreement, during the "Repayment Period," Plaintiffs would be required to make equal monthly payments based on an amortized calculation. Section 12(b) reads as follows:

> During the Repayment Period, your Total Payment Due will be equal to the amount, calculated monthly by Lender, which would be sufficient to fully repay the balance on your Account, at the then current ANNUAL PERCENTAGE RATE in **substantially equal installments** over the remaining term of your Account, plus all other amounts, including but not limited to late payments or late charges, then due but as yet unpaid.
>
> The Lender will apply each payment made with respect to your Account in the following order: (a) Periodic FINANCE CHARGES; (b) Late Charges; (c) Other Account Charges listed in Section 18 below, and any other charges charged to your account, and (d) the remaining principal balance. (Ex. 2, emphasis added.)

31. In connection with the December 15, 2010 HELOC, Plaintiffs also signed a FirstLine Equity Line Rider ("HELOC Rider") (attached as Exhibit 3), which likewise provides for substantially equal principal and interest payments to be made during the Repayment Period:

> During the Repayment Period, your Total Payment Due will be equal to the amount, calculated monthly by Lender, which would be sufficient to fully repay

the balance on your Account, at the then current ANNUAL PERCENTAGE RATE in **substantially equal installments** over the remaining term of your Account, plus all other amounts, including but not limited to late payments or late charges, then due but as yet unpaid.  (Ex. 3, emphasis added.)

32. An amortized monthly schedule for home mortgage payments, like the one described in Plaintiffs' HELOC Agreement and Rider, provides a level monthly payment with a varying amount going to repay the principal and interest due each month.  At the beginning of the repayment period, the proportion of the payment that pays off outstanding interest is greater than the amount paid off to principal; as the loan is paid off over time, the amount allocated to principal each month increases, while the amount of interest decreases.

33. According to Paragraphs 7 through 10 of the HELOC Agreement, the loan's interest rate is subject to change based on the Index rate in effect during each billing cycle, with a floor of 3.250%.

34. Plaintiffs' Repayment Period begins in December 2020.  The Annual Percentage Rate is 3.250%, which is a historically low rate that favors Plaintiffs.

35. Plaintiffs drew a total of $400,000 (of the $495,000 available) from the HELOC.

36. On or about March 30, 2020, Plaintiffs received a notice from Defendant stating that the HELOC Draw Period was closing and the Repayment Period would commence in December 2020.  Plaintiffs responded to the notice by emailing their relationship manager with Defendant, Managing Director John Packowski, to confirm the amount of the monthly payments that would be due on the HELOC beginning in December.  Mr. Packowski responded that he would have more details available in September.

37. On or about September 16, 2020, Plaintiffs e-mailed Mr. Packowski to again confirm the amount of the monthly payments coming due on the HELOC beginning in December 2020.  Mr. Packowski did not respond to this e-mail.

38. On or about October 7, 2020, Mr. Packowski sent Plaintiffs an e-mail stating that: "The fixed rate on your mortgage [the first loan] has expired.  You are now floating and

your current rate is 1.875%. Even though the HELOC will amortize and not revolve starting in December, at a rate of 3.25%, the blended rate is still lower than current market rates."

39. Plaintiffs responded the same day asking Mr. Packowski for the specific monthly payment amount to be due on the HELOC. Mr. Packowski responded the same day and stated: "The HELOC floats at the Prime Rate (current 3.25%). The monthly payment will be principal and interest on the outstanding balance amortized over 15 years."

40. Based on the information provided by Mr. Packowski and the language in the HELOC Agreement and Rider that they had signed in 2010, Plaintiffs determined that their monthly payments on the HELOC would be $2,810.68 per month, which is the amortized equal monthly payment based on the outstanding HELOC amount of $400,000 and the operative annual interest rate of 3.25%. Based on Plaintiffs' independent calculations, confirmed by multiple mortgage calculator tools publicly available online, the monthly payment would be $2,810.68 per month, which is comprised of $1,727.34 in principal and $1083.83 in interest for December 2020.

41. In early December 2020, Plaintiffs called Defendant's Mortgage department, again seeking to confirm the exact payment that was coming due. A representative of Defendant then finally e-mailed Plaintiffs a payment schedule for the HELOC, a copy of which is attached as Exhibit 4.

42. To Plaintiffs' surprise, the payment schedule from Defendant, in violation of the loan agreement, purports to charge Plaintiffs a monthly payment of $3,290.71 for December 2020, which is comprised of a fixed monthly amount of $2,222.22 in principal and $1,068.49 in interest. The remaining months, too, include a fixed principal payment of $2,222.22 and a varying interest payment, meaning that the payments due are a different amount every month. These payments appear to be calculated by using a fixed amount of principal – 1/180 of the loan's principal balance at the end of the draw period (400,000/180= $2,222.22) – to which a varying amount of interest is added, following a straight-line schedule of amortization.

43. While Plaintiffs have not yet received a monthly statement, online access to their HELOC account throughout December has stated that $3287.79 is due on December 26, 2020 as their first HELOC payment.

44. The payments set forth in Defendant's payment schedule and in Plaintiffs' online banking account are all incorrect because the schedule does not provide for substantially equal payments as promised in the HELOC Agreement and Rider, and instead applies a straight-line amortization method.

45. Defendant's straight-line amortization method results in monthly payments that are substantially higher than required by the Loan Agreement during approximately the first half of the Repayment Period. For example, under the agreed-upon amortization schedule, Plaintiffs' December 2020 payment (and each payment thereafter) should be $2,810.68, but Defendant instead has charged Plaintiffs $3,287.79 for December 2020, a difference of nearly $500.[2]

46. After reviewing the payment schedule and confirming the calculation error, but before the first payment was due, Plaintiffs reached out to Defendant multiple times seeking to correct the problem. On December 9, 2020, Plaintiffs participated on a conference call between Plaintiffs, Mr. Packowski, and another one of Defendant's employees, Gloria Wagner who represented herself as a "loan administrator." When Plaintiffs explained that the payment schedule was in error because the loan agreement called for mortgage amortization while the payment schedule applies straight-line amortization, the loan administrator replied "I do not have the contract." Plaintiffs responded by stating they had e-mailed a copy of the HELOC Agreement to John Packowski prior to the call, and that the bank should also have a copy on its system. The loan administrator stated she could not comment on an interpretation of the contract between straight line and mortgage amortization, however she acknowledged that those two definitions were at the essence of the payment discrepancy. She then stated that

---

[2] It is unclear why the schedule provided to Plaintiff states the December 2020 payment would be $3290.71, while the payment actually charged was $3287.91, but in any event, both of those payment amounts are incorrect and inflated.

1  Defendant calculated all HELOCS as straight line amortization as a matter of course,
2  apparently regardless of what the actual loan documents state. The loan
3  administrator suggested Plaintiffs speak to Defendant's legal department.  Plaintiffs invited
4  Defendant's legal department to contact them. To date, Plaintiffs have not heard from
5  Defendant's legal department

6       47.    Plaintiffs also filed a complaint with the Consumer Financial Protection Bureau.
7  Defendant's response to the complaint contained misrepresentations of the communications
8  between the parties, denied any wrongdoing, and again refused to explain the basis for its
9  calculation method or reform the payment schedule to conform with the schedule agreed to
10 when the loan was consummated.

11      48.    Despite disputing the payment amount and method of calculation, Plaintiffs do
12 not wish to default on the loan.  Consequently, Plaintiffs made the first payment of $3287.79
13 on December 24, 2020. This payment overcharged Plaintiffs in the amount of $477.11, which
14 is the difference between the payment demanded and the actual payment that should have been
15 due pursuant to the agreed-upon payment schedule outlined in the HELOC Agreement and
16 Rider.  Plaintiffs have no choice but to continue making monthly payments as demanded by
17 Defendant, or else they will be at risk of losing the home in foreclosure.  Plaintiffs will
18 continue incurring damages each month in the amounts overcharged by Defendant, which vary
19 each month.

20      49.    Plaintiffs are, and have been at all times, willing to make payments on their
21 loans.  Plaintiffs have never refused to make payments due or indicated they intend to default
22 on their loans.

23      50.    The accelerated payment schedule under Defendant's improper straight-line
24 amortization method denies Plaintiffs the benefit of the time-value of money derived from a
25 slower repayment schedule, which Plaintiffs specifically bargained for in their HELOC
26 Agreement.  Furthermore, Plaintiffs are informed and believe that there are borrowers/class
27 members who were unable to afford the artificially increased initial payments, thereby falling
28 into default and eventual foreclosure resulting from Defendant's error.

51. In perpetrating the acts and omissions alleged herein, Defendant acted pursuant to and in furtherance of its policies and practices.

52. Due to the fact that the HELOC agreement is a form contract, and the representation of Defendant's mortgage agent that "this [payment method] is how it's done for everyone," Plaintiffs reasonably believe, and on that basis, allege, that Defendant followed the same policies and billing practices, used the same or similar form contracts and agreements, notices, billing methods, and acted in the same or similar manner with respect to all of the HELOC loans that it originated nationwide during the class period.

53. As a direct and proximate result of the unlawful actions of Defendant, Plaintiffs and members of the proposed class have suffered and continue to suffer monetary losses in amounts as yet to be ascertained, but subject to proof at trial in amounts in excess of the minimum jurisdiction of this Court.

## CLASS ACTION ALLEGATIONS

54. Plaintiffs bring this lawsuit as a class action on behalf of themselves and all others similarly situated as members of the proposed Class pursuant to Federal Rules of Civil Procedure 23(b)(3) and/or 23(b)(2). This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of those provisions.

55. <u>Description of the Class</u>: The proposed Class is defined as: All residential home equity line mortgagors in the United States whose loans were originated with First Republic Bank and whose equity line agreements state that monthly payments during the Repayment Period are to be made in substantially equal payments, and whose Repayment Periods commenced during the class period.

56. Excluded from the proposed Class are Defendants and their parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; any and all federal, state or local governments, including but not limited to their department, agencies, divisions, bureaus, boards, sections, groups, counsels and/or subdivisions; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

57. Plaintiffs allege there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable. Plaintiffs reserve the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

58. <u>Numerosity</u>:  While the exact number of class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs are informed and believe that class members are so numerous that joinder of all affected borrowers/class members individually would be impractical.  Further, the identity and precise number of the Class and any subclasses to be added are reasonably ascertainable through Defendant's computerized records, and class members may be notified of the pendency of this action by mail, using a form of notice similar to that customarily used in class actions.

59. <u>Commonality</u>:  This action involves common questions of law and fact, as the action focuses on Defendant's systematic course of conduct with respect to originating HELOCs with contractual language setting forth amortization payment schedules, as described above, and later charging incorrect straight-line amortization payments.

60. Common questions of law and fact predominate over individualized questions. The questions of law and fact common to the class include, but are not limited to:

　　(a) Did Defendant use the same or substantially similar HELOC loan agreement for all class members?

　　(b) Did Defendant follow the same or similar billing policy and practice in calculating the monthly payments for all class members?

　　(c) Did Defendant's practices and schemes breach the HELOC agreements between Defendant and Plaintiffs and class members?

　　(d) Did Defendant's policies unjustly enrich Defendant at the expense of Plaintiffs and class members?

　　(e) Did Defendant's practices and schemes unlawfully violate federal law, including but not limited to the Truth in Lending Act?

   (f) Did Defendant's practices and schemes unlawfully violate the California Rosenthal Debt Collection Practice Act and the Fair Debt Collection Practices Act?

   (g) Did the practices and schemes employed by Defendant constitute a violation of California Business & Professions Code § 17200 et seq. as an unlawful, deceptive, and/or unfair business practice?

   (h) Is the class entitled to injunctive relief?

   (i) Is the class entitled to restitution?

   (j) Is the class entitled to other damages?

   (k) Was Defendant aware of the error in its computer system, which applied straight-line amortization to all borrowers regardless of the payment method provided in the loan agreement?

  61. <u>Typicality</u>:  The claims of the named Plaintiffs are typical of the proposed class because Defendant subjected all similarly situated HELOC borrowers to similar and/or identical conduct with respect to the language in the class members' form HELOC agreements and Defendant's systematic failure to calculate the Plaintiffs' and class members' loan payments in accordance with their HELOC agreements.

  62. <u>Adequacy of Representation</u>:  Plaintiffs will fairly and adequately protect the interests of the class and have retained counsel competent and experienced in class action litigation, including class actions in the State of California. Plaintiffs have no interests antagonistic to, or in conflict with, the class that Plaintiff seeks to represent.

  63. <u>Superiority of Class Action</u>:  A class action is superior to other available methods for the fair and efficient adjudication of the claims asserted herein, because joinder of all members is impracticable. Furthermore, because the damages suffered by individual members of the class may be relatively small, the expense and burden of individual litigation make it virtually impossible for class members to redress the wrongs done to them.  The likelihood of individual class members prosecuting separate claims is remote and class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and judicial system. Although the amount of

individual restitution and/or damages may vary, they can be determined from Defendant's records in a systematic and uniform manner for each Class member.

## FIRST CAUSE OF ACTION

## BREACH OF CONTRACT

64. Plaintiffs incorporate herein each of the foregoing paragraphs as though fully set forth herein.

65. Plaintiffs and Defendant entered into a HELOC Agreement on or about December 15, 2010. Plaintiffs at all times complied with the HELOC Agreement and its terms. Defendant breached the HELOC on or about December 26, 2020, by overcharging Plaintiffs as described above, and are expected to continue breaching the Agreement by incorrectly charging Plaintiffs every month of the Repayment Period.

66. As a result of Defendant's breach, Plaintiffs and class members suffered damages in an amount subject to proof, including loss of funds; loss of tax benefits; loss of time and money spent; loss of the time value of money and opportunity cost of the incorrectly charged funds; and attorneys' fees and costs.

67. As a result of the foregoing, Plaintiffs and the class are entitled to specific performance of the HELOC Agreements, other damages according to proof, and restitution of the improper charges.

## SECOND CAUSE OF ACTION

## UNJUST ENRICHMENT

68. Plaintiffs incorporate herein each of the foregoing paragraphs as though fully set forth herein.

69. Plaintiffs and Class members conferred benefits upon Defendant in the form of excessive payments during the first half of the Repayment Period on their respective HELOCs.

70. Defendants have been unjustly enriched by receiving all revenues (including but not limited to excessive and premature interest and principal payments) resulting from the acts and practices complained of herein.

71. Defendant's retention of such ill-gotten gains offends principles of equity, and accordingly, Plaintiffs and Class members seek the disgorgement and restitution of the amounts by which Defendant was unjustly enriched.

### THIRD CAUSE OF ACTION

### VIOLATION OF FAIR DEBT COLLECTION PRACTICES ACTS

72. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein.

73. California's Rosenthal Fair Debt Collection Practices Act ("Rosenthal Act") prohibits, among other things, a creditor from misrepresenting the amount of a debt to a consumer debtor.

74. Under the Rosenthal Act, the terms "consumer debt" and "consumer credit" mean money, property, or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer credit transaction. The term "consumer debt" includes a "mortgage debt." Cal. Civ. Code § 1788.2(f).

75. The Rosenthal Act incorporates the federal Fair Debt Collection Practices Act ("FDCPA"). "Notwithstanding any other provision of this title, every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of, and shall be subject to the remedies in Section 1692k of, Title 15 of the United States Code." § 1788.17.

76. The FDCPA further provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section… ((2)The false representation of (A) the character, amount, or legal status of any debt[.]" 15 U.S.C. 1692e. A debt collector also may not charge an amount "(including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement" 15 U.S.C. 1692f(1).

77. By misrepresenting the amount of the monthly mortgage payment that was due from Plaintiffs and the class members every month, due to its false calculation of the payment

schedule, Defendant violated both the Rosenthal Act and FDCPA.

78. Plaintiffs attempted to resolve this issue beginning when they learned of the error on or around December 3, 2020, but Defendant did not agree to follow the agreed-upon amortization schedule provided in the 2010 HELOC Agreement.

79. By virtue of these violations, Plaintiffs are entitled to damages, including statutory damages, attorneys' fees, and all other remedies available.

### FOURTH CAUSE OF ACTION
### VIOLATION OF THE TRUTH IN LENDING ACT

80. Plaintiffs incorporate herein each of the foregoing paragraphs as though fully set forth herein.

81. Defendant is a creditor within the meaning of the TILA, 15 U.S.C. § 1602(g) and the relevant implementing regulations set forth in Regulation Z.

82. The residential real estate loans in question are consumer credit transactions within the meaning of TILA, 15 USC § 1602.

83. Defendant failed to provide Plaintiffs disclosures that conform with the obligations under the TILA and Regulation Z. Specifically, TILA required Defendant, prior to extending credit, to disclose to Plaintiffs and the Class "how the amount of any minimum monthly or periodic payment will be determined" during the Repayment Period. TILA, 15 U.S.C. Section 1637a (a)(8)(c). Defendant violated this provision because prior to or during the closing of the loan, Defendant never disclosed that it would be applying a straight-line amortization schedule.

84. Federal law also prohibits Defendant from unilaterally changing the terms of a HELOC loan after it is opened. TILA, Reg. Z, 12 CFR Sec. 226.5b(f)(3).

85. After extending credit, Defendant unilaterally changed the terms of Plaintiffs' and the Class' HELOC loans years later by modifying their payment schedules to a straight-line amortization schedule, which applied a fixed amount of principal to be repaid each month, contrary to the payment method described and agreed to in the HELOC Agreement. Accordingly, by unilaterally changing the method of calculating the monthly payment,

Defendant violated TILA, Reg. Z, 12 CFR Sec 226.5b(f)(3).

86. By reason of these violations, Plaintiffs and the Class are entitled to declaratory and injunctive relief to reform their HELOC loans and to compel Defendant's compliance with the TILA and its regulations.

87. Plaintiffs and the class members' claims under TILA did not accrue until Defendant notified them of their first payment due under the Repayment Plan, at which point Plaintiffs and the class members were first put on inquiry or constructive notice of Defendant's improper payment schedule and resulting TILA violations. Consequently, Plaintiffs' and the class members inability to learn of the TILA violation equitably tolls the statute of limitations on their claims.

88. By reason of the aforesaid, Plaintiffs and the Class are entitled to the maximum statutory damages available under the TILA, as well as penalties, attorneys' fees, and costs.

## FIFTH CAUSE OF ACTION

### UNLAWFUL, DECEPTIVE, AND/OR UNFAIR BUSINESS PRACTICES

**[Business & Professions Code § 17200 *et seq*.]**

89. Plaintiffs incorporate each of the foregoing paragraphs as though fully set forth herein

90. California Business & Professions Code §17200 provides that "unfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice."

91. As alleged herein, each of Defendant's acts of wrongfully calculating Plaintiffs and the class members' monthly HELOC payments constitute unlawful, deceptive, and/or unfair competition in violation of the California Business and Professions Code §17200.

92. Defendant's unilateral change of Plaintiffs' and class members' monthly payment calculation, and failure to accurately disclose the payment calculation at the time the HELOC Agreements were entered, constitutes a violation of the Rosenthal Act, FDCPA, and TILA, as discussed above. Defendant's predicate Rosenthal Act, FDCPA, and TILA violations are unlawful acts under California's unfair competition law.

93. Defendant's conduct described herein is also unfair, in that it deprives Plaintiffs and class members the benefit of their respective bargains, systematically overcharges Plaintiffs and class members during the first half of their HELOC Repayment Periods, and departs from standard practice in the mortgage loan industry.

94. As a direct, foreseeable, and proximate result of Defendant's acts and omissions alleged herein, and within the relevant statutory period, Plaintiffs and members of the proposed class have been deprived of significant amounts of money, all to the unjust enrichment of Defendant. Accordingly, Plaintiff and members of the proposed class are entitled to restitution of such charges as is specifically authorized by California Business & Professions Code §17203.

95. Moreover, continuing commission by Defendant of the acts alleged above will irreparably harm Plaintiff and other borrowers of Defendant for which harm they have no plain, speedy or adequate remedy at law. Accordingly, Defendant must be enjoined from further engaging in these practices.

96. Plaintiffs and class members and their attorneys are further entitled to attorneys' fees pursuant to California Business & Professions Code §17204.

WHEREFORE, Plaintiff prays for judgment against Defendant, as set forth herein below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1) For an Order certifying this action to be a class action;
2) For appropriate preliminary and permanent injunctive relief;
3) For compensatory and statutory damages in an amount to be ascertained at trial;
4) For penalties as required by law;
5) For reasonable attorney's fees;
6) For costs of suit incurred herein; and
7) For such further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiffs, on behalf of themselves and all other members of the proposed class, hereby request that this action be tried before a jury.

DATED: January 4, 2021                   **PETTIS LAW FIRM LLP**

By:_____
James C. Pettis
Sarah B. Burwick
*Attorneys for Plaintiffs and the Proposed Class*